ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

   - v. -                                   :

JULIO SANTANA JOSEPH,                       :
FRANCISCO RUBIO MONTALVO,                   :
ANGEL PEREZ AVILES,                         :
  a/k/a "Mike,"                              :
DEIVY BURGOS FELIX,                         :
CHENGY PADILLA GARO,                        :
GEURY GUZMAN ROSA,                          :
DANTE CAMINERO VASQUEZ,                     :
SAUL HERNANDEZ BATISTA,                     :
MOISES DE LA CRUZ DECENA,                   :
CELSO MIGUEL SARITA,                        :
EDWARD CUEVAS ESCANO,                       :
SANTIAGO GUZMAN GONZALEZ,                   :
JOSE ARISMENDY CUESTA ABREU,               :
CARLOS PERDOMO ROSARIO,                     :
  a/k/a "El Depo,"                           :
ELINSON REYES ALMONTE,                      :
YEURY AMARANTE ROSARIO,                     :
MARIO ANTONIO PLACIDO,                      :
YGNACIO ESTEVEZ MESSON,                     :
BORIS GIL GUERRERO,                         :
VICTOR VELASQUEZ ROCHTTIS,                  :
  a/k/a "Vitico," and                        :
RAFAELA MEDINA,                             :
  a/k/a "Carolina,"                          :
                                            :
              Defendants.                     :

- - - - - - - - - - - - - - - x

JUDGE CROTTY

**SEALED INDICTMENT**

13 Cr.

**13 CRIM 213**



U.S. DISTRICT COURT
FILED
MAR 2 0 2013
S.D. OF N.Y.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 2 7 2014

## COUNT ONE

## (EXTORTION CONSPIRACY)

The Grand Jury charges:

### RELEVANT PERSONS

1. At all times relevant to this Indictment, JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ BATISTA, MOISES DE LA CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD CUEVAS ESCANO, SANTIAGO GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA ABREU, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," ELINSON REYES ALMONTE, YEURY AMARANTE ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO ESTEVEZ MESSON, BORIS GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," RAFAELA MEDINA, a/k/a "Carolina," the defendants, and others known and unknown, were citizens of the Dominican Republic who participated in a scheme to extort United States citizens by posing as members of the United States Drug Enforcement Administration ("DEA") and other United States agencies, which resulted in United States citizens paying monies to them in the Dominican Republic via money remitting services and by wire transfer, as described more fully below.

## THE IMPERSONATION AND EXTORTION SCHEME

2.      From at least in or about 2008, up to and including the date of the filing of this Indictment, JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ BATISTA, MOISES DE LA CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD CUEVAS ESCANO, SANTIAGO GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA ABREU, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," ELINSON REYES ALMONTE, YEURY AMARANTE ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO ESTEVEZ MESSON, BORIS GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," RAFAELA MEDINA, a/k/a "Carolina," the defendants, and others known and unknown, engaged in a scheme to extort money from individuals located in the United States by posing as DEA Agents or other representatives of the United States Government (the "Impersonation and Extortion Scheme"). Each of the defendants made extortion calls and/or received money from victims who had been extorted. The Impersonation and Extortion Scheme targeted individuals whom the defendants believed had purchased prescription drugs unlawfully over the internet or through call centers. The illicit websites and call centers at issue sold

3

pills to customers that would typically require a doctor's prescription to purchase. The illicit websites and call centers did not require consumers to obtain the required prescriptions before purchase (hereinafter, the pills sold in this manner are referred to as the "Prescription Drugs").

3.    Beginning in or about June 2010, the DEA established a telephone hotline (the "Hotline"), to allow victims to report extortion attempts and other contacts with the defendants and other individuals not named as defendants herein who engaged in the Impersonation and Extortion Scheme (the "Extorters") and who posed as DEA and other federal agents.  Since the Hotline was established in or about June 2010, and continued through in or about January 2013, the DEA has received approximately 6,500 reports from victims of extortion attempts, nearly all of which followed substantially the same pattern described in paragraph 4 below.  In sum, through the Hotline, the DEA has learned of the Extorters' efforts to obtain over $3.5 million in extortion payments from victims, and of actual extortion payments from victims to the Extorters of over $880,000.  These attempted extortions and actual extortion payment amounts reflect only what was reported to the DEA through the Hotline, and thus represent only a portion of the extortion payments that the

Extorters have attempted to obtain, or actually obtained, from their victims.

4. The DEA Impersonation and Extortion Scheme typically operated as follows:

a. First, certain of the Extorters, including certain of the defendants, purchased, or otherwise obtained, lists of individuals whom the Extorters believed had previously purchased Prescription Drugs over the internet on illicit websites or through illicit call centers located in the Dominican Republic ("Customer Lists"). The Customer Lists generally contained the names, addresses, credit card numbers and other information for individuals located in the United States.

b. An Extorter next contacted a customer from the Customer Lists (the "victim") and identified himself or herself as a DEA agent or representative of another United States agency. Often, the Extorter provided the name of an actual DEA supervisor from a DEA office located in the United States. The Extorters attempted to extort money from victims throughout the United States, including victims in New York, New York, and the Bronx, New York.

c. During a call with a victim, an Extorter informed the victim that the victim was under investigation for, or had been charged with, by authorities in the Dominican Republic, or elsewhere, illegally purchasing Prescription Drugs that were sent from the Dominican Republic. In a single call or series of calls and emails, the Extorter detailed the purported criminal charges and potential penalties facing the victim, including imprisonment, and the likelihood that the victim would be arrested and extradited to a foreign country for prosecution. In truth, the Extorter did not work for the United States government, and falsely stated that the victim was facing criminal charges in the Dominican Republic or the United States. At no time during the course of the conspiracy charged in this Indictment did a victim of the scheme described herein face criminal charges in the Dominican Republic as a result of a purported or actual purchase of Prescription Drugs by the victim.

d. During a call with the victim, an Extorter also generally informed the victim that he or she could dispose of, or avoid, the criminal charges by making a cash payment. In order to do so, the Extorter had the victim transfer between several hundred to several thousand dollars either through (i) a

money remitting service to a particular individual in the Dominican Republic, or (ii) via wire transfer to a bank account in the name of a co-conspirator not named as a defendant herein ("CC-1"), and assured the victim that the money transfer would resolve the purported pending charges. Statements by the Extorter that the victim was subject to a fine and could avoid the filing or continuation of criminal charges in the Dominican Republic or the United States by paying the Extorter were false.

e. Following receipt of a payment from a victim, an Extorter typically contacted the victim again. During the follow-up conversations, the Extorter demanded additional payments and threatened to re-file criminal charges against the victim. If the victim refused to make, or to continue to make, extortion payments to the Extorter, the Extorter threatened the victim with his or her imminent arrest, with searches of the victim's home in the United States by federal law enforcement officers, or with public disclosure of the victim's prior purchases of Prescription Drugs. In truth, the Extorters had no knowledge of criminal investigations of any of the victims of this scheme and knew full well that they lacked the authority to subject any of their victims to arrest, fine, seizures, or any other form of punishment.

f. According to a confidential source working with the DEA ("CS-1"), the Extorters typically made extortion calls from illicit call centers located in the Dominican Republic (the "Call Centers"). In these Call Centers, which were typically located in rooms within certain Extorters' residences in the Dominican Republic, the Extorters gathered together and used multiple computers equipped with Voice Over Internet Protocol ("VOIP") technology to make extortion calls to victims listed on a Customer List. VOIP is a means of transmitting digital voice communications over the internet via a high-speed internet connection. The VOIP technology allowed the Extorters to contact their victims by using VOIP lines that made it appear as though the Extorters were calling from telephone numbers with area codes from within the United States. For example, the Extorters used VOIP lines that made it appear as though the Extorters were calling from, among other places, Washington, D.C., and New York, New York, when, in truth, the Extorters were located in the Dominican Republic. The Extorters often made hundreds of extortion calls a day from these Call Centers to victims in the United States.

g. Once a particular victim made an extortion payment to one of the Extorters, the Extorter who received that

payment often shared that victim's contact information with other Extorters, who then besieged the victim with additional, repeated extortion attempts via telephone. While using these lines to further the Impersonation and Extortion Scheme, the Extorters often traded tips with other Extorters in the same Call Center on the best techniques to use to extort victims.

5.   The following are examples of some of the extortion calls made by the defendants and their co-conspirators revealed by the DEA's investigation:

a.   Beginning in or around 2010, the Extorters made numerous calls to a person located in the United States ("Victim-1"), claiming to be federal agents with the DEA. During these calls, the Extorters told Victim-1, in substance, that Victim-1 was subject to a DEA fine because Victim-1 had illegally purchased Prescription Drugs over the internet. In or about October 2010, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," the defendant, made an extortion call to Victim-1. Over the course of several months, Victim-1 made extortion payments of several thousand dollars to the Extorters. SANTIAGO GUZMAN GONZALEZ, the defendant, received at least one of the extortion payments sent by Victim-1 at a money remitting store in the Dominican Republic.

b. Beginning in or around 2011, and continuing through in or around January 2013, the Extorters made dozens of phone calls to an individual located in the United States ("Victim-2"), claiming to be federal agents with the DEA and with the Department of Homeland Security ("DHS"). During these calls, the Extorters told Victim-2 that Victim-2 had violated the law by purchasing Prescription Drugs over the internet. The Extorters demanded that Victim-2 make payments of increasingly larger "fines" in order to avoid criminal prosecution. In total, Victim-2 paid CC-1, and others known and unknown, over $500,000 as a result of the extortion calls.

c. Beginning in or around April 2012, and continuing through in or about August 2012, ANGEL PEREZ AVILES, a/k/a "Mike," the defendant, and other Extorters, made numerous phone calls to an individual located in the United States ("Victim-3"), claiming to be federal agents with the DEA. During these calls, PEREZ AVILES and other Extorters demanded payments and told Victim-3 that Victim-3's wife had violated the law by purchasing Prescription Drugs over the internet. During this time period, Victim-3 made payments to the Extorters of over $30,000 as a result of the extortion calls.

d. On or about September 1, 2012, ANGEL PEREZ AVILES, a/k/a "Mike," the defendant, called an individual located in the United States ("Individual-1") and represented himself to be a Special Agent for the DEA. PEREZ AVILES stated, in substance, that the DEA had confiscated a package containing Prescription Drugs, that the package was purportedly sent from another country, and that it was addressed to an individual located in the United States ("Victim-4"). Individual-1 stated, in substance, that PEREZ AVILES must be mistaken. PEREZ AVILES asked how Individual-1 knew that, and Individual-1 stated, in substance, that Victim-4 was related to Individual-1 and that Victim-4 was currently hospitalized. PEREZ AVILES stated, in substance, that he hoped Victim-4 died.

e. In or about September 2012, JULIO SANTANA JOSEPH, the defendant, called an individual ("Victim-5") located in New York, New York, and identified himself as a Special Agent with the DEA. SANTANA JOSEPH told Victim-5, in substance, that he wanted to speak with Victim-5 and accused Victim-5 of previously making improper online purchases of Prescription Drugs. In subsequent statements to Victim-5 over the telephone, SANTANA JOSEPH told Victim-5, in substance, that Victim-5 had to pay approximately $1,850 via wire transfer to the Dominican

Republic in order to avoid criminal charges and a "mandatory" prison term of "12 to 24 months" for purchasing Prescription Drugs over the internet.

        f.   On or about October 5, 2012, CELSO MIGUEL SARITA, the defendant, called an individual located in the United States ("Victim-6") on the telephone and demanded, in substance, that Victim-6 pay approximately $4,583, which MIGUEL SARITA described as a fine Victim-6 owed because Victim-6's wife had purportedly purchased Prescription Drugs over the internet. Victim-6 told MIGUEL SARITA, in substance, that Victim-6 had previously paid MIGUEL SARITA a fine. After speaking with Victim-6, MIGUEL SARITA called EDWARD CUEVAS ESCANO, the defendant, and, in substance, MIGUEL SARITA advised CUEVAS ESCANO on how best to extort more money from Victim-6. MIGUEL SARITA and CUEVAS ESCANO, in substance, joked with one another about Victim-6's distress at being extorted.

### STATUTORY ALLEGATIONS

        6.   From at least in or about 2008, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO, GEURY GUZMAN ROSA,

DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ BATISTA, MOISES DE LA
CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD CUEVAS ESCANO, SANTIAGO
GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA ABREU, CARLOS PERDOMO
ROSARIO, a/k/a "El Depo," ELINSON REYES ALMONTE, YEURY AMARANTE
ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO ESTEVEZ MESSON, BORIS
GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," RAFAELA
MEDINA, a/k/a "Carolina," the defendants, and others known and
unknown, willfully and knowingly, did combine, conspire,
confederate, and agree together and with each other to commit
extortion, as that term is defined in Title 18, United States
Code, Section 1951(b)(2), by obtaining money from and with the
consent of other people, to wit, the victims of the extortion
and impersonation scheme, which consent would have been and was
induced by the wrongful use of actual and threatened force,
violence, and fear, and thereby would and did obstruct, delay,
and affect commerce, and the movement of articles and
commodities in commerce, as that term is defined in Title 18,
United States Code, Section 1951(b)(3).

## Overt Acts

7.    In furtherance of the conspiracy and to effect the
illegal object thereof, the following overt acts, among others,

were committed in the Southern District of New York and elsewhere:

a. In or about early August 2012, JULIO SANTANA JOSEPH, the defendant, made a number of extortion calls to an individual located in the United States ("Victim-7"), claiming to be a Special Agent with the DEA. Following these calls, an undercover DEA agent sent approximately $300 on Victim-7's behalf from the United States to the Dominican Republic via a money remitting service.

b. On or about August 8, 2012, a co-conspirator not named as a defendant herein ("CC-2") picked up approximately $300 sent by the undercover DEA agent on Victim-7's behalf at a money remitting store in the Dominican Republic.

c. On or about September 14 2012, ELISON REYES ALMONTE, the defendant, called an individual located in the United States ("Victim-8"), and, in substance, assured Victim-8 that Victim-8 was doing the right thing by paying a fine to dismiss the charges against Victim-8. Earlier that day, Victim-8 sent approximately $3,200 from the United States to the Dominican Republic via a money remitting service.

d. On or about September 14, 2012, a co-conspirator not named as a defendant herein ("CC-3") picked up

approximately $3,200 sent by Victim-8 at a money remitting store in the Dominican Republic.

e.     In or about August 2012, ANGEL PEREZ AVILES, a/k/a "Mike," the defendant, called an individual located in the United States ("Victim-9") a number of times on the telephone and represented himself to be a Special Agent with the DEA. PEREZ AVILES demanded, in substance, that Victim-9 pay PEREZ AVILES $550. During these calls, PEREZ AVILES informed Victim-9, in substance, that the payment was the only means of avoiding criminal charges in the Dominican Republic related to Victim-9's purported purchase of Prescription Drugs over the internet. After Victim-9 received this extortion call, an undercover DEA agent located in the United States sent $200 on Victim-9's behalf from the United States to the Dominican Republic via a money remitting service.

f.     On or about August 27, 2012, DEIVY BURGOS FELIX, the defendant, picked up approximately $200 sent by the undercover DEA agent on Victim-9's behalf from a money remitting store in the Dominican Republic.

g.     On or about August 31, 2012, ANGEL PEREZ AVILES, a/k/a "Mike," the defendant, called an individual located in New York, New York ("Victim-10") on the telephone at

least two times and represented himself to be a Special Agent with the DEA. PEREZ AVILES demanded, in substance, that Victim-10 pay a $700 fine. In these calls, PEREZ AVILES informed Victim-10, in substance, that the payment was the only means of avoiding criminal charges in the Dominican Republic related to Victim-10's purported purchase of Prescription Drugs over the internet. PEREZ AVILES instructed Victim-10 to send the payment from a particular money remittance store located in New York, New York, and to address the payment to DEIVY BURGOS FELIX, the defendant, in the Dominican Republic.

h. On or about November 26, 2012, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, MOISES DE LA CRUZ DECENA, and YGNACIO ESTEVEZ MESSON, the defendants, possessed VOIP devices and a laptop containing scripts used for making extortion calls and Customer Lists.

i. On or about November 23, 2012, CHENGY PADILLA GARO, the defendant, spoke with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, and, among other things, VELASQUEZ ROCHTTIS provided PADILLA GARO with the name of an individual ("Victim-11") in the United States who had previously been extorted by an Extorter posing as a Special Agent with the DEA.

j.     On or about October 14, 2012, GEURY GUZMAN ROSA, the defendant, called an individual in the United States ("Victim-12") on the telephone and represented himself to be a Special Agent. GUZMAN ROSA demanded, in substance, that Victim-12 pay a $500 fine to avoid criminal charges.

k.     On or about October 11, 2012, YGNACIO ESTEVEZ MESSON, the defendant, spoke, in substance, with GEURY GUZMAN ROSA, the defendant, about obtaining Customer Lists.

l.     On or about August 14, 2012, GEURY GUZMAN ROSA and CHENGY PADILLA GARO, the defendants, spoke on the telephone with an individual located in New York, New York ("Victim-13"). GUZMAN ROSA and PADILLA GARO identified themselves as working for the DEA.  Victim-13 stated, in substance, that Victim-13 had previously received telephone calls from individuals purporting to be DEA agents coming from the phone number utilized by GUZMAN ROSA and PADILLA GARO.   Victim-13 questioned whether the calls Victim-13 received from ROSA's number were part of a scam.   In response, GUZMAN ROSA stated, in substance, that he was going to personally arrest Victim-13, and that GUZMAN ROSA would bring a gun with him.

m.     On or about August 9, 2012, DANTE CAMINERO VASQUEZ, the defendant, spoke on the telephone with an

individual located in the United States ("Victim-14").
CAMINERO VASQUEZ represented himself to be a Special Agent with
the DEA. CAMINERO VASQUEZ demanded that Victim-14, in substance,
make a payment of approximately $500 to authorities in order to
avoid criminal charges purportedly related to prior purchases of
Prescription Drugs made by Victim-14's husband.

n.    On or about November 27, 2012, SAUL HERNANDEZ
BATISTA, the defendant, spoke with VICTOR VELASQUEZ ROCHTTIS,
a/k/a "Vitico," the defendant, and discussed, in substance,
their plan to extort money from an individual in the United
States by posing as a United States official.

o.    On or about November 4, 2012, MOISES DE LA CRUZ
DECENA, the defendant, spoke with CHENGY PADILLA GARO, the
defendant, in substance, about obtaining a Customer List and
making a large number of extortion calls before the end of
December 2012.

p.    On or about October 5, 2012, after speaking
with Victim-6, CELSO MIGUEL SARITA, the defendant, called EDWARD
CUEVAS ESCANO, the defendant, and MIGUEL SARITA advised CUEVAS
ESCANO on how best to extort more money from Victim-6.

q.    On or about October 5, 2012, EDWARD CUEVAS
ESCANO, the defendant, called Victim-6 on the telephone and, in

substance, demanded a $4583 payment to dismiss criminal charges against Victim-6 and Victim-6's wife.

r.   On or about July 23, 2012, SANTIAGO GUZMAN GONZALEZ, the defendant, and JOSE ARISMENDY CUESTA ABREU, the defendant, spoke, in substance, about working together to make extortion calls.

s.   On or about July 26, 2012, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," the defendant, called an undercover DEA agent ("UC-1"), claiming to be a Special Agent.  In substance, PERDOMO ROSARIO asked UC-1 to verify the confirmation number for the extortion payment UC-1 had sent to a money remitting store in the Dominican Republic.

t.   On or about July 14, 2012, ELINSON REYES ALMONTE, the defendant, spoke with SANTIAGO GUZMAN GONZALEZ, the defendant, about, in substance, GUZMAN GONZALEZ's successful extortion of an unidentified individual in United States, and REYES ALMONTE's share of that extortion payment.

u.   On or about July 31, 2012, YEURY AMARANTE ROSARIO, the defendant, spoke, in substance, with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, about whether AMARANTE ROSARIO would provide Customer Lists to VELASQUEZ ROCHTTIS.

19

v.   On or about October 9, 2012, MARIO ANTONIO PLACIDO, the defendant, spoke, in substance, with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, about their plan to share extortion payments.

w.   On or about August 16, 2012, BORIS GIL GUERRERO, the defendant, spoke, in substance, with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, about their plan to obtain extortion payments.

x.   On or about August 20, 2012, CAROLINA MEDINA, the defendant, spoke with VICTOR VELASQUEZ ROCHTTIS, the defendant, and stated, in substance, that she had successfully extorted approximately $4,500 from an individual located in the United States ("Victim-15").

y.   On or about September 23, 2011, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, emailed Customer Lists to RAFAELA MEDINA, a/k/a "Carolina," the defendant.

z.   On or about March 14, 2012, FRANCISCO RUBIO MONTALVO, the defendant, contacted an undercover DEA Agent ("UC-2"), and, in substance, informed UC-2 that RUBIO MONTALVO would report UC-2 to United States law enforcement officials if UC-2 stopped purchasing Prescription Drugs from RUBIO MONTALVO.

(Title 18, United States Code, Section 1951.)

## COUNT TWO

**(CONSPIRACY TO IMPERSONATE FEDERAL OFFICERS)**

The Grand Jury further charges:

8.   The allegations set forth in paragraphs One through Five are incorporated by reference as if set forth fully herein.

9.   From at least in or about 2008, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ BATISTA, MOISES DE LA CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD CUEVAS ESCANO, SANTIAGO GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA ABREU, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," ELINSON REYES ALMONTE, YEURY AMARANTE ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO ESTEVEZ MESSON, BORIS

21

GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," RAFAELA MEDINA, a/k/a "Carolina," the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 912.

10. It was a part and an object of the conspiracy that JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ BATISTA, MOISES DE LA CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD CUEVAS ESCANO, SANTIAGO GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA ABREU, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," ELINSON REYES ALMONTE, YEURY AMARANTE ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO ESTEVEZ MESSON, BORIS GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," RAFAELA MEDINA, a/k/a "Carolina," the defendants, and others known and unknown, willfully and knowingly would and did falsely assume and pretend to be an officer and employee acting under the authority of the United States and a department, agency and officer thereof, and would and did act as such, and who in such pretended character would and did demand and obtain money, papers, documents, and things

22

of value, in violation of Title 18, United States Code, Section 912.

## Overt Acts

11. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. In or about early August 2012, JULIO SANTANA JOSEPH, the defendant, made a number of extortion calls to Victim-7, claiming to be a Special Agent with the DEA. Following these calls, an undercover DEA agent sent approximately $300 on Victim-7's behalf from the United States to the Dominican Republic via a money remitting service.

b. On or about August 8, 2012, CC-2 picked up approximately $300 sent by the undercover DEA agent on Victim-7's behalf at a money remitting store in the Dominican Republic.

c. On or about September 14 2012, ELISON REYES ALMONTE, the defendant, called Victim-8, and, in substance, assured Victim-8 that Victim-8 was doing the right thing by paying a fine to dismiss the charges against Victim-8. Earlier that day, Victim-8 sent approximately $3,200 from the United States to the Dominican Republic via a money remitting service.

d.    On or about September 14, 2012, CC-3 picked up approximately $3,200 sent by Victim-8 at a money remitting store in the Dominican Republic.

e.    In or about August 2012, ANGEL PEREZ AVILES, a/k/a "Mike," the defendant, called Victim-9 a number of times on the telephone and represented himself to be a Special Agent with the DEA. PEREZ AVILES demanded, in substance, that Victim-9 pay PEREZ AVILES $550.  During these calls, PEREZ AVILES informed Victim-9, in substance, that the payment was the only means of avoiding criminal charges in the Dominican Republic related to Victim-9's purported purchase of Prescription Drugs over the internet.  After Victim-9 received this extortion call, an undercover DEA agent located in the United States sent $200 on Victim-9's behalf from the United States to the Dominican Republic via a money remitting service.

f.    On or about August 27, 2012, DEIVY BURGOS FELIX, the defendant, picked up approximately $200 sent by the undercover DEA agent on Victim-9's behalf from a money remitting store in the Dominican Republic.

g.    On or about August 31, 2012, ANGEL PEREZ AVILES, a/k/a "Mike," the defendant, called Victim-10 on the telephone at least two times and represented himself to be a

Special Agent with the DEA. PEREZ AVILES demanded, in substance, that Victim-10 pay a $700 fine. In these calls, PEREZ AVILES informed Victim-10, in substance, that the payment was the only means of avoiding criminal charges in the Dominican Republic related to Victim-10's purported purchase of Prescription Drugs over the internet. PEREZ AVILES instructed Victim-10 to send the payment from a particular money remittance store located in New York, New York, and to address the payment to DEIVY BURGOS, the defendant, in the Dominican Republic.

h.    On or about November 26, 2012, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, MOISES DE LA CRUZ DECENA, and YGNACIO ESTEVEZ MESSON, the defendants, possessed VOIP devices and a laptop containing scripts used for making extortion calls and Customer Lists.

i.    On or about November 23, 2012, CHENGY PADILLA GARO, the defendant, spoke with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, and, among other things, VELASQUEZ ROCHTTIS provided PADILLA GARO with the name of Victim-11, who had previously been extorted by an Extorter posing as a Special Agent with the DEA.

j.    On or about October 14, 2012, GEURY GUZMAN ROSA, the defendant, called Victim-12 on the telephone and

represented himself to be a Special Agent. GUZMAN ROSA demanded, in substance, that Victim-12 pay a $500 fine to avoid criminal charges.

k.   On or about October 11, 2012, YGNACIO ESTEVEZ MESSON, the defendant, spoke, in substance, with GEURY GUZMAN ROSA, the defendant, about obtaining Customer Lists.

l.   On or about August 14, 2012, GEURY GUZMAN ROSA and CHENGY PADILLA GARO, the defendants, spoke on the telephone with Victim-13. GUZMAN ROSA and PADILLA GARO identified themselves as working for the DEA. Victim-13 stated, in substance, that Victim-13 had previously received telephone calls from individuals purporting to be DEA agents coming from the phone number utilized by GUZMAN ROSA and PADILLA GARO. Victim-13 questioned whether the calls Victim-13 received from ROSA's number were part of a scam. In response, GUZMAN ROSA stated, in substance, that he was going to personally arrest Victim-13, and that GUZMAN ROSA would bring a gun with him.

m.   On or about August 9, 2012, DANTE CAMINERO VASQUEZ, the defendant, spoke on the telephone with Victim-14. CAMINERO VASQUEZ represented himself to be a Special Agent with the DEA. CAMINERO VASQUEZ demanded that Victim-14, in substance, make a payment of approximately $500 to authorities in order to

avoid criminal charges purportedly related to prior purchases of Prescription Drugs made by Victim-14's husband.

n.    On or about November 27, 2012, SAUL HERNANDEZ BATISTA, the defendant, spoke with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, and discussed, in substance, their plan to extort money from an individual in the United States by posing as a United States official.

o.    On or about November 4, 2012, MOISES DE LA CRUZ DECENA, the defendant, spoke with CHENGY PADILLA GARO, the defendant, in substance, about obtaining a Customer List and making a large number of extortion calls before the end of December 2012.

p.    On or about October 5, 2012, after speaking with Victim-6, CELSO MIGUEL SARITA, the defendant, called EDWARD CUEVAS ESCANO, the defendant, and MIGUEL SARITA advised CUEVAS ESCANO on how best to extort more money from Victim-6.

q.    On or about October 5, 2012, EDWARD CUEVAS ESCANO, the defendant, called Victim-6 on the telephone and, in substance, demanded a $4583 payment to dismiss criminal charges against Victim-6 and Victim-6's wife.

r.    On or about July 23, 2012, SANTIAGO GUZMAN GONZALEZ, the defendant, and JOSE ARISMENDY CUESTA ABREU, the

27

defendant, spoke, in substance, about working together to make extortion calls.

        s.    On or about July 26, 2012, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," the defendant, called UC-1, claiming to be a Special Agent. In substance, PERDOMO ROSARIO asked UC-1 to verify the confirmation number for the extortion payment UC-1 had sent to a money remitting store in the Dominican Republic.

        t.    On or about July 14, 2012, ELINSON REYES ALMONTE, the defendant, spoke with SANTIAGO GUZMAN GONZALEZ, the defendant, about, in substance, GUZMAN GONZALEZ's successful extortion of an unidentified individual in United States, and REYES ALMONTE's share of that extortion payment.

        u.    On or about July 31, 2012, YEURY AMARANTE ROSARIO, the defendant, spoke, in substance, with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, about whether AMARANTE ROSARIO would provide Customer Lists to VELASQUEZ ROCHTTIS.

        v.    On or about October 9, 2012, MARIO ANTONIO PLACIDO, the defendant, spoke, in substance, with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, about their plan to share extortion payments.

w.     On or about August 16, 2012, BORIS GIL GUERRERO, the defendant, spoke, in substance, with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, about their plan to obtain extortion payments.

x.     On or about August 20, 2012, CAROLINA MEDINA, the defendant, spoke with VICTOR VELASQUEZ ROCHTTIS, the defendant, and stated, in substance, that she had successfully extorted approximately $4,500 from Victim-15.

y.     On or about September 23, 2011, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, emailed Customer Lists to RAFAELA MEDINA, a/k/a "Carolina," the defendant.

z.     On or about March 14, 2012, FRANCISCO RUBIO MONTALVO, the defendant, contacted UC-2, and, in substance, informed UC-2 that RUBIO MONTALVO would report UC-2 to United States law enforcement officials if UC-2 stopped purchasing Prescription Drugs from RUBIO MONTALVO.

(Title 18, United States Code, Section 371.)

## COUNT THREE

### (WIRE FRAUD CONSPIRACY)

The Grand Jury further charges:

12. The allegations set forth in paragraphs One through Five are incorporated by reference as if set forth fully herein.

13. From at least in or about 2008, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ BATISTA, MOISES DE LA CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD CUEVAS ESCANO, SANTIAGO GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA ABREU, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," ELINSON REYES ALMONTE, YEURY AMARANTE ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO ESTEVEZ MESSON, BORIS GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," RAFAELA MEDINA, a/k/a "Carolina," the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

14.   It was a part and an object of the conspiracy that JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ BATISTA, MOISES DE LA CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD CUEVAS ESCANO, SANTIAGO GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA ABREU, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," ELINSON REYES ALMONTE, YEURY AMARANTE ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO ESTEVEZ MESSON, BORIS GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," RAFAELA MEDINA, a/k/a "Carolina," the defendants, and others known and unknown, willfully and knowingly having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Overt Acts

15. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. In or about early August 2012, JULIO SANTANA JOSEPH, the defendant, made a number of extortion calls to Victim-7, claiming to be a Special Agent with the DEA. Following these calls, an undercover DEA agent sent approximately $300 on Victim-7's behalf from the United States to the Dominican Republic via a money remitting service.

b. On or about August 8, 2012, CC-2 picked up approximately $300 sent by the undercover DEA agent on Victim-7's behalf at a money remitting store in the Dominican Republic.

c. On or about September 14 2012, ELISON REYES ALMONTE, the defendant, called Victim-8, and, in substance, assured Victim-8 that Victim-8 was doing the right thing by paying a fine to dismiss the charges against Victim-8. Earlier that day, Victim-8 sent approximately $3,200 from the United States to the Dominican Republic via a money remitting service.

d.   On or about September 14, 2012, CC-3 picked up approximately $3,200 sent by Victim-8 at a money remitting store in the Dominican Republic.

e.   In or about August 2012, ANGEL PEREZ AVILES, a/k/a "Mike," the defendant, called Victim-9 a number of times on the telephone and represented himself to be a Special Agent with the DEA. PEREZ AVILES demanded, in substance, that Victim-9 pay PEREZ AVILES $550. During these calls, PEREZ AVILES informed Victim-9, in substance, that the payment was the only means of avoiding criminal charges in the Dominican Republic related to Victim-9's purported purchase of Prescription Drugs over the internet. After Victim-9 received this extortion call, an undercover DEA agent located in the United States sent $200 on Victim-9's behalf from the United States to the Dominican Republic via a money remitting service.

f.   On or about August 27, 2012, DEIVY BURGOS FELIX, the defendant, picked up approximately $200 sent by the undercover DEA agent on Victim-9's behalf from a money remitting store in the Dominican Republic.

g.   On or about August 31, 2012, ANGEL PEREZ AVILES, a/k/a "Mike," the defendant, called Victim-10 on the telephone at least two times and represented himself to be a

Special Agent with the DEA. PEREZ AVILES demanded, in substance, that Victim-10 pay a $700 fine. In these calls, PEREZ AVILES informed Victim-10, in substance, that the payment was the only means of avoiding criminal charges in the Dominican Republic related to Victim-10's purported purchase of Prescription Drugs over the internet. PEREZ AVILES instructed Victim-10 to send the payment from a particular money remittance store located in New York, New York, and to address the payment to DEIVY BURGOS FELIX, the defendant, in the Dominican Republic.

      h. On or about November 26, 2012, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, MOISES DE LA CRUZ DECENA, and YGNACIO ESTEVEZ MESSON, the defendants, possessed VOIP devices and a laptop containing scripts used for making extortion calls and Customer Lists.

      i. On or about November 23, 2012, CHENGY PADILLA GARO, the defendant, spoke with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, and, among other things, VELASQUEZ ROCHTTIS provided PADILLA GARO with the name of Victim-11, who had previously been extorted by an Extorter posing as a Special Agent with the DEA.

      j. On or about October 14, 2012, GEURY GUZMAN ROSA, the defendant, called Victim-12 on the telephone and

represented himself to be a Special Agent. GUZMAN ROSA demanded, in substance, that Victim-12 pay a $500 fine to avoid criminal charges.

     k.   On or about October 11, 2012, YGNACIO ESTEVEZ MESSON, the defendant, spoke, in substance, with GEURY GUZMAN ROSA, the defendant, about obtaining Customer Lists.

     l.   On or about August 14, 2012, GEURY GUZMAN ROSA and CHENGY PADILLA GARO, the defendants, spoke on the telephone with Victim-13. GUZMAN ROSA and PADILLA GARO identified themselves as working for the DEA. Victim-13 stated, in substance, that Victim-13 had previously received telephone calls from individuals purporting to be DEA agents coming from the phone number utilized by GUZMAN ROSA and PADILLA GARO. Victim-13 questioned whether the calls Victim-13 received from ROSA's number were part of a scam. In response, GUZMAN ROSA stated, in substance, that he was going to personally arrest Victim-13, and that GUZMAN ROSA would bring a gun with him.

     m.   On or about August 9, 2012, DANTE CAMINERO VASQUEZ, the defendant, spoke on the telephone with Victim-14. CAMINERO VASQUEZ represented himself to be a Special Agent with the DEA. CAMINERO VASQUEZ demanded that Victim-14, in substance, make a payment of approximately $500 to authorities in order to

avoid criminal charges purportedly related to prior purchases of Prescription Drugs made by Victim-14's husband.

n.    On or about November 27, 2012, SAUL HERNANDEZ BATISTA, the defendant, spoke with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, and discussed, in substance, their plan to extort money from an individual in the United States by posing as a United States official.

o.    On or about November 4, 2012, MOISES DE LA CRUZ DECENA, the defendant, spoke with CHENGY PADILLA GARO, the defendant, in substance, about obtaining a Customer List and making a large number of extortion calls before the end of December 2012.

p.    On or about October 5, 2012, after speaking with Victim-6, CELSO MIGUEL SARITA, the defendant, called EDWARD CUEVAS ESCANO, the defendant, and MIGUEL SARITA advised CUEVAS ESCANO on how best to extort more money from Victim-6.

q.    On or about October 5, 2012, EDWARD CUEVAS ESCANO, the defendant, called Victim-6 on the telephone and, in substance, CEUVAS ESCANO demanded a $4583 payment to dismiss criminal charges against Victim-6 and Victim-6's wife.

r.    On or about July 23, 2012, SANTIAGO GUZMAN GONZALEZ, the defendant, and JOSE ARISMENDY CUESTA ABREU, the

defendant, spoke, in substance, about working together to make extortion calls.

s. On or about July 26, 2012, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," the defendant, called UC-1, claiming to be a Special Agent. In substance, PERDOMO ROSARIO asked UC-1 to verify the confirmation number for the extortion payment UC-1 had sent to a money remitting store in the Dominican Republic.

t. On or about July 14, 2012, ELINSON REYES ALMONTE, the defendant, spoke with SANTIAGO GUZMAN GONZALEZ, the defendant, about, in substance, GUZMAN GONZALEZ's successful extortion of an unidentified individual in United States, and REYES ALMONTE's share of that extortion payment.

u. On or about July 31, 2012, YEURY AMARANTE ROSARIO, the defendant, spoke, in substance, with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, about whether AMARANTE ROSARIO would provide Customer Lists to VELASQUEZ ROCHTTIS.

v. On or about October 9, 2012, MARIO ANTONIO PLACIDO, the defendant, spoke, in substance, with VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, about their plan to share extortion payments.

w.    On or about August 16, 2012, BORIS GIL
GUERRERO, the defendant, spoke, in substance, with VICTOR
VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, about their
plan to obtain extortion payments.

x.    On or about August 20, 2012, CAROLINA MEDINA,
the defendant, spoke with VICTOR VELASQUEZ ROCHTTIS, the
defendant, and stated, in substance, that she had successfully
extorted approximately $4,500 from Victim-15.

y.    On or about September 23, 2011, VICTOR
VELASQUEZ ROCHTTIS, a/k/a "Vitico," the defendant, emailed
Customer Lists to RAFAELA MEDINA, a/k/a "Carolina," the
defendant.

z.    On or about March 14, 2012, FRANCISCO RUBIO
MONTALVO, the defendant, contacted UC-2, and, in substance,
informed UC-2 that RUBIO MONTALVO would report UC-2 to United
States law enforcement officials if UC-2 stopped purchasing
Prescription Drugs from RUBIO MONTALVO

(Title 18, United States Code, Section 1349.)

## FORFEITURE ALLEGATIONS

### (EXTORTION)

16.   As the result of committing the extortion offense in
violation of Title 18, United States Code, Section 1951, alleged

in Count One of this Indictment, JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ BATISTA, MOISES DE LA CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD CUEVAS ESCANO, SANTIAGO GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA ABREU, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," ELINSON REYES ALMONTE, YEURY AMARANTE ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO ESTEVEZ MESSON, BORIS GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," and RAFAELA MEDINA, a/k/a "Carolina," the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense alleged in Count One of this Indictment

(Title 18, United States Code, Section 981; Title 28, United States Code, Section 2461.)

## (WIRE FRAUD)

17. As a result of committing the wire fraud offense alleged in Count Three of this Indictment, JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO, GEURY GUZMAN ROSA, DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ BATISTA, MOISES DE LA CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD CUEVAS ESCANO, SANTIAGO

GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA ABREU, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," ELINSON REYES ALMONTE, YEURY AMARANTE ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO ESTEVEZ MESSON, BORIS GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS, a/k/a "Vitico," and RAFAELA MEDINA, a/k/a "Carolina," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of said offense.

(Title 18, United States Code, Section 981; Title 28, United States Code, Section 2461.)

### (SUBSTITUTE ASSET PROVISION)

18. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to 18 U.S.C. § 981, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461, to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

      (Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461.)


_Nathan Smith_ (signature)
FOREPERSON

_Preet Bharara_ (signature)
PREET BHARARA
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JULIO SANTANA JOSEPH, FRANCISCO RUBIO MONTALVO, ANGEL PEREZ
AVILES, a/k/a "Mike," DEIVY BURGOS FELIX, CHENGY PADILLA GARO,
GEURY GUZMAN ROSA, DANTE CAMINERO VASQUEZ, SAUL HERNANDEZ
BATISTA, MOISES DE LA CRUZ DECENA, CELSO MIGUEL SARITA, EDWARD
CUEVAS ESCANO, SANTIAGO GUZMAN GONZALEZ, JOSE ARISMENDY CUESTA
ABREU, CARLOS PERDOMO ROSARIO, a/k/a "El Depo," ELINSON REYES
ALMONTE, YEURY AMARANTE ROSARIO, MARIO ANTONIO PLACIDO, YGNACIO
ESTEVEZ MESSON, BORIS GIL GUERRERO, VICTOR VELASQUEZ ROCHTTIS,
a/k/a "Vitico," RAFAELA MEDINA, a/k/a "Carolina,"

Defendants.

SEALED INDICTMENT

13 Cr.

(18 U.S.C. §§ 1349, 1951, 1912, 371.)

PREET BHARARA
United States Attorney.

A TRUE BILL

_Kathleen Leacock_
Foreperson